**RECORD NOS. 13-4622(L); 13-4646**

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

## v.

## SHERINA HOSEIN; NAZIM HOSEIN,

*Defendants – Appellants*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

———————

## BRIEF OF APPELLANTS

———————

**Chiege O. Kalu Okwara**
LAW OFFICE OF CHIEGE O. KALU OKWARA
**15720 John J. Delaney Drive, Suite 300**
**Charlotte, North Carolina  28277**
**(704) 944-3221**

*Counsel for Appellant Sherina Hosein*

**Randolph M. Lee**
LAW OFFICE OF RANDOLPH MARSHALL LEE
**Post Office Box 77005**
**Charlotte, North Carolina  28271**
**(704) 841-2222**

*Counsel for Appellant Nazim Hosein*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES ................................................................ 1

STATEMENT OF THE CASE AND FACTS ............................................. 2

SUMMARY OF THE ARGUMENT ......................................................... 10

ARGUMENT ............................................................................................. 12

    I.    THE UNITED STATES DISTRICT COURT IMPOSED
        AN UNREASONABLE SENTENCE,
        PROCEDURALLY, WHEN IT IMPOSED A TERM OF
        SUPERVISED RELEASE UPON MR. HOSEIN, WHO
        WAS DEPORTABLE ............................................................ 12

        A.    Standard of Review ......................................... 12

        B.    Discussion of the Issue .................................... 14

    II.    THE COURT ERRED IN FAILING TO GRANT MRS.
        HOSEIN DEPARTURES AS A MINIMAL
        PARTICIPANT IN THE OFFENSE ..................................... 22

        A.    Standard of Review ......................................... 22

        B.    Discussion of the Issue .................................... 22

CONCLUSION .............................................................................. 30

REQUEST FOR ORAL ARGUMENT ....................................................... 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Gall v. United States*,
    552 U.S. 38 (2007) ................................................................. 13, 18, 22

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ............................................................................ 14

*Rita v. United States*,
    551 U.S. 338 (2007) ......................................................................... 19

*United States v. Akinkoye*,
    185 F.3d 192 (4th Cir. 1999) ............................................................ 23

*United States v. Allen*,
    491 F.3d 178 (4th Cir. 2007) ............................................................ 22

*United States v. Boulware*,
    604 F.3d 832 (4th Cir. 2010) ............................................................ 22

*United States v. Carlos Bautista-Villanueva*,
    No. 12-4828 (4th Cir. Nov. 21, 2013) ....................................... *passim*

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) ................................................ 13, 16, 19

*United States v. Carthorne*,
    726 F.3d 503 (4th Cir. 2013) ............................................................ 13

*United States v. Daughtrey*,
    874 F.2d 213 (4th Cir. 1989) ............................................................ 23

*United States v. Diosdado-Star*,
  630 F.3d 359 (4th Cir. 2011) ............................................................ 13

*United States v. Engle*,
  592 F.3d 495 (4th Cir. 2010) ............................................................ 19

*United States v. Evans*,
  526 F.3d 155 (4th Cir. 2008) ............................................................ 18

*United States v. Fells*,
  920 F.2d 1179 (4th Cir. 1990) ........................................................... 25

*United States v. Lynn*,
  592 F.3d 572 (4th Cir. 2010) ....................................................... 12, 19

*United States v. Moulden*,
  478 F.3d 652 (4th Cir. 2007) ............................................................ 20

*United States v. Palinkas*,
  938 F.2d 456 (4th Cir. 1991) ............................................................ 25

*United States v. Pratt*,
  239 F.3d 640 (4th Cir. 2001) ................................................. 23, 24, 25

*United States v. Rivera-Santana*,
  668 F.3d 95 (4th Cir. 2012), *cert. denied*,
  133 S. Ct. 274 (2012) ...................................................................... 12

*United States v. Susi*,
  674 F.3d 278 (4th Cir. 2012) ............................................................ 18

*United States ex rel Steven May v. Purdue Pharma L.P.*,
  No. 12-2287 (4th Cir. Dec. 12, 2013) ............................................... 14

## **STATUTES**

8 U.S.C. § 1325(a)(1) ......................................................................... 3

18 U.S.C. § 492 ................................................................................. 3

18 U.S.C. § 982 ................................................................................ 3

18 U.S.C. § 1014 .............................................................................. 2

18 U.S.C. § 1344 .............................................................................. 2

18 U.S.C. § 1349 .............................................................................. 2

18 U.S.C. § 3231 .............................................................................. 1

18 U.S.C. § 3553(a) ........................................................ 13, 17, 18, 19

18 U.S.C. § 3742 .............................................................................. 1

28 U.S.C. § 1291 .............................................................................. 1

28 U.S.C. § 2461(c) .......................................................................... 3

## **<u>GUIDELINES</u>**

U.S.S.G. § 3B1.2 ........................................................... 22, 23, 24

U.S.S.G. § 3C1.1 .............................................................................. 4

U.S.S.G. § 5D1.1 .................................................................... *passim*

U.S.S.G. § 5D1.1(c) ......................................................... 15, 16, 17, 20

U.S.S.G. Appendix C, Amend. 756 ............................................... 14

U.S.S.G. Chapter 5, Part A ........................................................... 1

## STATEMENT OF JURISDICTION

Sherina Hosein ("Mrs. Hosein") appeals from a judgment entered on August 23, 2013 in the United States District Court for the Western District of North Carolina. Mrs. Hosein timely appealed on August 14, 2013, prior to the entry of the judgment in this case.

Nazim Hosein ("Mr. Hosein") appeals from a judgment entered on August 28, 2013 in the United States District Court for the Western District of North Carolina. Mr. Hosein timely appealed on August 30, 2013.

This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. The district court had jurisdiction under 18 U.S.C. § 3231.

## STATEMENT OF THE ISSUES

Mrs. Hosein and Mr. Hosein were tried before a jury sitting in the Western District of North Carolina between June 25, 2012 and June 27, 2012. Both appellants were convicted on all counts. At sentencing, the district court found that the loss amount was $120,465.00.

After all adjustments, Mrs. Hosein's final offense level was 21, with a criminal history category of I. Pursuant to U.S.S.G. Chapter 5, Part A, based upon a total offense level of 21 and a criminal history category of I, the guideline range for imprisonment was 24 months to 30 months.

1

Mrs. Hosein objected to the loss amount. Mrs. Hosein also argues that the court erred, as a matter of law, in failing to grant her a minimal participant adjustment in the offense.

Mr. Hosein argues that the district court imposed an unreasonable sentence, procedurally, when it imposed a term of supervised release after service of his active sentence as he was a deportable alien.

## STATEMENT OF THE CASE AND FACTS

Mr. and Mrs. Hosein are husband and wife who were originally charged in a four Count Bill of Indictment filed in the Western District of North Carolina on August 16, 2011. On March 22, 2012, a Superseding Bill of Indictment was filed, adding counts five and six. On March 30, 2012, an Amended Superseding Bill of Indictment was filed. Count One charges the Hoseins with Bank Fraud Conspiracy, in violation of 18 U.S.C. § 1349. This offense is alleged to have occurred between December 1, 2010 and February 9, 2011.

Counts Two and Three charged each of the appellants with Making False Statements to Obtain a Loan, in violation of 18 U.S.C. § 1014. These offenses were alleged to have occurred on December 27, 2010. Count Four charged the Hoseins with Bank Fraud, in violation of 18 U.S.C. § 1344. This offense is alleged to have occurred on January 3, 2011. Count Five charged

2

Mrs. Hosein with Illegal Entry, in violation of 8 U.S.C. § 1325(a)(1). Count

Six charged Mr. Hosein with Illegal Entry, in violation of 8 U.S.C.

§ 1325(a)(1).

The Indictment included a Notice of Forfeiture and Finding of

Probable Cause, pursuant to 18 U.S.C. §§ 982 and 492 and 28 U.S.C.

§ 2461(c).

Mrs. Hosein was arrested in the Middle District of Florida on August

29, 2011. She was ordered detained and ordered transferred to the Western

District of North Carolina on September 1, 2011. On October 5, 2011, she

appeared before U.S. Magistrate Judge David S. Cayer and was ordered

detained.

On May 31, 2012, upon a motion by the government, Counts Five and

Six were dismissed by the Court. A jury trial was held between June 25,

2012 and June 27, 2012. On June 27, 2012, Both Mr. Hosein and Mrs.

Hosein were convicted on all remaining counts by the jury. These were

Counts 1 through 4 of the Amended Superseding Indictment.

A presentence report was prepared. The Presentence Report provided

the following factual averment about statements the Hoseins' made to

investigators:

> "An investigation was ongoing as to Darren Littles and the
> fraudulent loan obtained with Piedmont Advantage Credit

3

Union in Charlotte, NC. When agents contacted the Hoseins about the Piedmont Advantage Credit Union car loan, they were questioned if they had taken out any other loans. The Hoseins reported they had no other recent loans. In addition, the Hoseins failed to provide information about the location of the vehicle obtained through the loan at TD Bank. These false statements impeded the investigation of this case which has resulted in substantial losses to banking institutions. Though two of the vehicles were repossessed and ultimately sold, the defendants made no payments and were not even in possession of two of the vehicles, indicating no intent to make good on these loans. Therefore, the intended loss for the three car loans is $120,145 and $500 for the credit card fraudulently obtained (Application Note F(i)) that was never used. The Hoseins reported that they paid for one of the vehicles but investigative reports indicate this loan was paid in full only after the car was repossessed and sold."

(JA 982-983, 998-999, 1109-1110) (Presentence Report para. 12).

The Presentence Report had recommended that the Court impose a two level enhancement under *U.S.S.G.* § 3C1.1:

The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense; therefore, two levels are added. U.S.S.G. § 3C1.1.

(JA 984, 1000, 1111) (Presentence Report para. 23). *See also* JA 983, 999, 1110.  (Presentence Report para. 15) ("The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice.").

4

To this enhancement, both appellants objected. (JA 993, 1013, 1103-1104.) Mrs. Hosein argued that there was no credible evidence supporting this additional enhancement for obstruction of justice. (JA 993, 1013.) Mr. Hosein's objections did not present any argument, factual or legal, on the point.

With respect to the imposition of a term of supervised release, the Presentence Report averred that the Court need not, but may, impose a term of supervised release, subject to the guideline guidance about not doing so where the defendant is in a deportable status… "except as provided in subsection c"). (JA 987, 1003), ((Presentence Report paras. 49 and 50); (JA 1114) (Presentence Report paras. 50 and 51.).)

At sentencing, Mr. Hosein asserted the proposition that the District Court lacked jurisdiction over him, or the case, but he did eventually engage the District Court in colloquy appropriate to the proceeding. *See generally* (JA 872-875.) The District Court proceeded to hear from Mr. Hosein's counsel about the two objections he filed to the proposed guideline offense level. The District Court sustained one objection and overruled the other objection.

During the sentencing hearing, the government summarized the evidence presented at trial — evidence showing that Mr. Hosein was the

leader of Mrs. Hosein in this conspiracy, of which both had been convicted. Mr. Hosein called the investigating case agent and presented himself to be a victim of the fraud. (JA 883.) Mr. Hosein made misrepresentations to the case agent about why Mr. and Mrs. Hosein had not made payments on the vehicles obtained by the fraudulent loans. *See id*. The Government's position appeared to be that Mr. Hosein was the mastermind of the crime.

The District Court granted both Hoseins' objections to this two-level enhancement for obstruction of justice. (JA 829-836.) In sustaining Mr. Hosein's objection, the Court noted it was a "close call." (JA 884.) While recognizing that the legal standards for enhancement under the governing Guideline provisions were not met, the Court also found that Mr. Hosein had provided "materially false information" to law enforcement,[1] but that the false information had not been shown to "have significantly impeded the investigation." (JA 885.)

The District Court determined that the applicable Guideline range for both Hoseins, based upon an Offense Level 17, Criminal History Category I presented an advisory term of imprisonment of 24 months to 30 months. (JA 843, 887.)

---

[1] The transcript of the telephone call between Mr. Hosein and the case agent is reported in the Joint Appendix. (JA 955-978.)

6

During additional colloquy with the Court, Mr. Hosein's counsel highlighted for the Court Mr. Hosein's family life, and how positive that was. (JA 887-896.) Mr. Hosein's counsel argued for a sentence comparable to that given the co-defendant, Mrs. Hosein (asking for a 24 month sentence). (JA 895-896.)

Mr. Hosein suggested to the Court that his counsel had been ineffective for not challenging the jurisdiction of the Court. (JA 899-902.)

The government reminded the Court that Mr. Hosein had called the Secret Service and presented himself as having been the victim of the crime. (JA 900.) The government also noted that, while Mr. Hosein's allocution for a favorable sentence had made note of Mr. Hosein's parenting to successful children, Mr. Hosein had also positioned himself to present Mrs. Hosein (co-defendant) as the culpable one, and not he. (JA 900-901.)

For these reasons, the government argued for a sentence of 30 months, 6 months higher than that given Mrs. Hosein, but also within, although at the top of the applicable guideline range. (JA 901.)

Mr. Hosein was escorted from the courtroom after attempting to renew his challenge to the Court's jurisdiction. (JA 903.) The Court noted that this conduct had been present during the trial, too. (JA 903-904.)

As the Court began to pronounce its sentence, it recognized the advisory nature of the guidelines, acknowledged the information in the Presentence Report, acknowledged the arguments of counsel, and recognized Mr. Hosein's allocution. It then imposed a 36 month sentence. (JA 905.)

In acknowledging the Section 3553(a) factors, the Court stated that the variance sentence took into account "the need for the imposed sentence to reflect the seriousness of the offense, promote respect for the law, just punishment, for adequate deterrence, and importantly protect the public from further crimes of the Defendant." *Id.*

The positive factors noted by the Court were that Mr. Hosein did not have any criminal history, that he had been a strong and effective father to his children, and that he had been in custody since November, 2011. On the negative side, the Court noted Mr. Hosein's role in this conspiracy, beginning in December, 2010 and ending January, 2011.

The conspiracy involved multiple transactions to obtain several expensive automobiles, during which Mr. Hosein played a more dominant role over that of his wife. The Court found Mr. Hosein to be the "mastermind" of the crimes. (JA 907.) It also found that, while Mr.

Hosein's statements did not "significantly impede the investigation," they were lies intended to advance the purposes of the fraud.  (JA 907-908.)

The Court also imposed a two year term of supervised release, yet noting Mr. Hosein would probably be deported.  (JA 908-909.)  The basis for the imposition of supervised release was a deterrence of future criminal conduct and the need to protect the public.

At the conclusion of pronouncing sentence, counsel for Mr. Hosein objected to the lack of notice for the upward variance, yet conceding notice was not required. The Court acknowledged this comment, and also noted that the government had not sought a variance sentence but had argued for one at the high end of the otherwise applicable guideline range.  (JA 912-913.)

Judgment was filed August 28, 2013.  (JA 925-931.)  Notice of Appeal was filed by Mr. Hosein on August 30, 2013.  (JA 933-934.)

Mrs. Hosein filed objections to the report.  (JA 991-994.)  A revised presentence report was prepared, addressing the objections filed by Mrs. Hosein. Nonetheless, no changes were made to the revised presentence report.  (JA 995-1009.)

On July 26, 2013, Mrs. Hosein was sentenced to 24 months imprisonment on counts One, Two, Three and Four, to be served

concurrently in the Federal Bureau of Prisons, followed by two (2) years of supervised release on each count, all such terms to run concurrently. (JA 918-924.)

Judgment was entered on August 23, 2013.  (JA 918-924.)  Mrs. Hosein filed a *pro se* notice of appeal on August 14, 2013 (JA 932), prior to the entry of judgment.  Mrs. Hosein's appeal was deemed timely filed on the date judgment was entered.  (JA 918-934.)

## SUMMARY OF THE ARGUMENT

Mrs. Hosein argues that she should have received a four level reduction because she was a minimal participant in the offense. At her sentencing, the district court summarily rejected the arguments Mrs. Hosein advanced in favor of reductions for minimal role in the offense as well as her objections to the erroneous calculations of the loss amount attributed to her.

Mr. Hosein, through counsel, objected to the upward variance and the sentence of imprisonment imposed by the District Court. The District Court not only imposed a term of imprisonment above and beyond the otherwise applicable guideline range, it also imposed a term of supervised release. Mr. Hosein opines on appeal that the imposition of a supervised release term constituted a variance from the governing provisions of the sentencing guidelines. As such, it constitutes a variant sentence.

§ 5D1.1 of the sentencing guidelines manual was amended in 2011. There appear to be no published cases in the Fourth Circuit governing the procedural and substantive reasonableness of supervised release term imposed under that amendment. There is an unpublished opinion holding that supervised release terms imposed in arguable contravention of § 5D1.1 are capable of reasonableness review.

This Honorable Court should accept this opportunity to publish guidance on the procedural justification to be used by sentencing courts when supervised release terms are considered for defendants who will, or more than likely will be deported upon completion of their terms of imprisonment.

The supervised release term imposed herein on Mr. Hosein is procedurally unreasonable. Consequently, this Honorable Court should strike the sentence imposed herein, and remand for resentencing by means of a published opinion.

# ARGUMENT

## I

## THE UNITED STATES DISTRICT COURT IMPOSED AN UNREASONABLE SENTENCE, PROCEDURALLY, WHEN IT IMPOSED A TERM OF SUPERVISED RELEASE UPON MR. HOSEIN, WHO WAS DEPORTABLE.

### A.    Standard of Review

At sentencing, Mr. Hosein argued for a lower sentence than the one imposed by the court.  Mr. Hosein argued for a 24 month sentence.  (JA 895.)  Mr. Hosein received a varied sentence — outside the guideline range. (JA 905).  Thus, Mr. Hosein preserved his claims of procedural sentencing error on appeal. *See United States v. Lynn*, 592 F.3d 572, 581 (4th Cir. 2010).

This Honorable Court reviews a sentence for procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). *See also Lynn*, 592 F.3d at 581. The same standard applies whether the sentence is "inside, just outside, or significantly outside the Guidelines range." *United States v. Rivera-Santana*, 668 F.3d 95, 100-101 (4th Cir. 2012) (internal citation and quotation marks omitted), *cert. denied*, 133 S. Ct. 274 (2012).

In determining procedural reasonableness, this court considers whether the district court properly calculated the defendant's advisory Guidelines range, gave the parties an opportunity to argue for an appropriate

12

sentence, considered the 18 U.S.C. § 3553(a) factors, selected a sentence based on clearly erroneous facts, and sufficiently explained the selected sentence. *Gall*, 552 U.S. at 49-51.

In reviewing any sentence outside the Guidelines range, the appellate court must give due deference to the sentencing court's decision because it has "flexibility in fashioning a sentence outside of the Guidelines range," and need only "set forth enough to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis" for its decision. *United States v. Diosdado-Star*, 630 F.3d 359, 364 (4th Cir. 2011) (*citing Gall*, 552 U.S. at 56); *see also United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (sentencing court "must make an individualized assessment based on the facts presented") (citation and emphasis omitted).

If the sentence is free of procedural error, the court reviews it for substantive reasonableness, taking into account the totality of the circumstances. *Gall*, 552 U.S. at 51.

In this case, counsel for Mr. Hosein is aware that terms of supervised release to which objections are not lodged are reviewed under a plain error standard. *E.g. United States v. Carthorne*, 726 F.3d 503, 509 (4th Cir. 2013). However, this plain error standard is not properly applied in this instant case because the supervised release term was a variance from the guidelines, and

because counsel for Mr. Hosein had generally objected to a variant sentence. The District Court acknowledged as much. *Cf.* (JA. 911-912.)

Mr. Hosein also suggests to this Honorable Court that it possesses plenary jurisdiction to apply the governing law in light of the objection made by defense counsel to a variant sentence. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."). *United States ex rel Steven May v. Purdue Pharma L.P.* No. 12-2287 at 9 n. 3 (4th Cir. December 12, 2013).

## B.    Discussion of the Issue

Prior to November of 2011, the sentencing guidelines provided for the levying of a supervised release term where mandated by statute or where a term of imprisonment of more than one year was imposed. The sentencing court had the authority to impose supervised release in any other case, if it so chose. *U.S.S.G.* § 5D1.1 (2010). Changes were wrought in 2011.

By virtue of amendment 756, effective November 1, 2011, § 5D1.1 began to address the status of deportable alien defendants and supervised release terms. *See U.S.S.G.* Appendix C, Amend. 756. With respect to deportable alien defendants, the default position post-2011 was that

14

supervised release should not be imposed: "The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." *U.S.S.G.* § 5D1.1(c).

The relevant application note following the guideline states that, "unless such a defendant legally returns to the United States, supervised release is unnecessary." *Id*. § 5D1.1, App. Note. 5. Moreover, the note explains that, "[i]f such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution." *Id.*

Finally, the note allows for the fact that a period of supervised release may be appropriate for such a defendant, "if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Id.*

Since the  promulgation of subsection c, there appears to be but one appellate case reported in the Fourth Circuit addressing whether a sentencing court's decision to impose supervised release on a deportable alien is subject to appellate review for procedural reasonableness.

In that appellate case, which is unpublished, this Honorable Court was presented with the question of whether the supervised release term imposed

15

by the trial court was procedurally reasonable where the sentencing court did not weigh and consider, on the record, the reasons and justifications for opposing supervised release. *United States v. Carlos Bautista-Villanueva*, No. 12-4828 slip op. 3 (4th Cir. November 21, 2013).

The panel majority there cited but one published case, that of *United States v. Carter*, 564 F.3d325, 328 (4th Cir. 2009) for the proposition that procedural errors at sentencing can occur where there is an inadequate explanation for deviation from the guideline range. *Id*. at 5.

In analyzing the issue, the *Bautista-Villanueva* panel recognized that a trial court's decision to impose a supervised release term on a deportable alien was a variance sentence and that, accordingly, some justification must be given on the record.  Indeed, the court strongly suggested that § 5D1.1(c) must be considered to be as much advisory as any other guideline provision. *Id*.

Dissent in the *Bautista-Villaneuva* case was well explained. It recognized that the majority's opinion and holding "created a new procedural formalism that will be required whenever courts sentence deportable aliens to supervised release." *Id.* 7 (Hamilton, J. dissenting). It also recognized the novel issue being presented. *See id*. 10-11.

While not endorsing the majority's decision, it did properly characterize the "new procedural rule that district courts hereafter must always explicitly justify an imposition of supervised release on deportable aliens, perhaps with specific reference to U.S.S.G. § 5D1.1(c)." *Id.* 11.

In anticipation, perhaps, of what should be the scope of appellate review for terms of supervised release being imposed on deportable aliens, the dissent opined that it would be sufficient to invoke the Section 3553(a) factors. *Id*. 12.

Counsel for Mr. Hosein suggests to this Honorable Court that the majority opinion in *Bautista-Villanueva* is correct. § 5D1.1 requires considered analysis before a decision is made to impose supervised release upon deportable aliens. As noted in the application notes and commentary to that section, not only must the sentencing court consider the Section 3553(a) factors, but it must also consider whether supervised release is necessary for deterrence or to protect the public.

As noted in the guideline section, the preference is to prosecute anew should a deportable alien be deported and then return. *U.S.S.G.* § 5D1.1(c) app. n. 5.  In the absence of any explanation or analysis, it would be virtually impossible to have meaningful appellate review of the decision to impose a term of supervised release.

That would, in turn, diminish the policy guidance — the advisory nature — of Section 5D1.1 and would create an exception to the scope of appellate review of sentences imposed in district courts. To allow to stand the approach employed by the District Court here would be to effectively remove from appellate review any supervised release imposition decisions by district courts.

The *Bautista-Villanueva* holding would also be consistent with the general body of law governing appellate review of sentences. While a sentence within the guideline range may be presumptively reasonable, *United States v. Susi*, 674 F.3d 278, 289 (4th Cir. 2012), courts are not free to not address — and not apply — the Section 3553(a) factors. "If the district court decides to impose a sentence outside the Guidelines range, it must ensure that its justification supports the 'degree of the variance.'" *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (*quoting Gall*, 552 U.S. at 50).

After the remand of *Bautista-Villanueva*, the district court modified the judgment and imposed no term of supervised release on December 17, 2013 and judgment was entered on December 18, 2013. *See*, *United States v. Bautista-Villanueva*, 1:12-cr-00222-WDQ, U.S. District Court, District of

Maryland, Baltimore Division, Doc. # 29. Bautista-Villanueva did not

appeal the amended judgment, so that judgment stands. *Id.*

The issue here for Mr. Hoein is whether mere incantation of the

guideline provision of § 5D1.1 is "justification." Mere incantation of the

existence of § 3553(a), and the imposition of sentence, is not enough to craft

a procedurally and substantively reasonable sentence. Generally, some

individualized, and particularized, assessment of a defendant in light of the

§ 3553(a) factors is required. *See Lynn*, 592 F.3d at 576.

("[A]n individualized explanation must accompany every sentence")

(court need not mechanically scroll through each portion of the subsection of

Sec. 3553(a)); *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009).

An extensive explanation of the sentence imposed is not required as long as

the appellate court is satisfied "'that [the district court] has considered the

parties' arguments and has a reasoned basis for exercising [its] own legal

decision-making authority.'" *United States v. Engle*, 592 F.3d 495, 500 (4th

Cir. 2010) (*quoting Rita v. United States*, 551 U.S. 338, 356 (2007)).

However, the reasons articulated by the district court for a given

sentence need not be "couched in the precise language of § 3553(a)," so long

as the "reasons can be matched to a factor appropriate for consideration . . .

19

and clearly tied to [defendant's] particular situation." *United States v. Moulden*, 478 F.3d 652, 658 (4th Cir. 2007).

Just as a need exists for sentencing courts to explain their sentences in consideration of the statutory factors, so too exists the need to explain the guideline policy considerations in § 5D1.1(c). This is what *Bautista-Villanueva* opined. In the absence of any analysis or stated justification, appellate courts would be asked to impose their judgment on the propriety of district courts' actions, and this would seem inimical to the current sentencing jurisprudence and standards of review.

For Mr. Hosein, the sentencing court merely stated it was aware of the provisions of Section 5D1.1.  (JA 908-909.)  Nonetheless, it imposed supervised release to protect the public and for deterrence.  (JA 908-909.) Other than this blanket statement, the record was devoid of any justification for imposing supervised release.

Further, since the decision by the court below to impose a term of supervised release was a deviation from the general guideline principles of § 5D1.1, the imposition of supervised release was a variance, and should be reviewed accordingly.  Since the District Court did not explain its decision to impose supervised release but merely referred to the commentary strictures that deterrence and public protection would allow for such, the

20

sentence of Mr. Hosein is legally infirm in that it is procedurally unreasonable.

The § 5D1.1 guideline provision for deciding whether to impose supervised release upon deportable aliens is new. The default provision is to not impose supervised release. Supervised release may be proper for deterrence and to protect the public. Since the decision to impose supervised release varies from the default provision of the guidelines, the decision should be amenable to appellate review — under the same standards and protocols as governs other variance questions.

This Honorable Court's majority opinion in *Bautista-Villanueva* was well-reasoned.  It should be applied in this case and, if applied, should warrant vacating the sentence of Mr. Hosein. Upon remand for resentencing, the District Court should be instructed to adequately explain its decision to impose upon Mr. Hosein a term of supervised release.

Given the newness of § 5D1.1, this Honorable Court is invited to accept this case as an opportunity to provide further guidance to district courts on the issue presented herein. It could do this by publishing an opinion consistent with the majority holding in its unpublished opinion of *Bautisa-Villanueva*.

## II
## THE COURT ERRED IN FAILING TO GRANT MRS. HOSEIN DEPARTURES AS A MINIMAL PARTICIPANT IN THE OFFENSE.

Mrs. Hosein argues that she should have received a four levels reduction because she was a minimal participant in the offense.

### A.    Standard of Review

This court reviews a sentence under a deferential abuse of discretion standard. *Gall*, 552 U.S. at 51. The first step in this review requires the court to inspect for procedural reasonableness by ensuring that the district court committed no significant procedural errors. *United States v. Boulware*, 604 F.3d 832, 837-38 (4th Cir. 2010).

A reviewing court then considers the substantive reasonableness of the sentence imposed, taking into account the totality of the circumstances. *Gall*, 552 U.S. at 51. This court presumes that a sentence within a properly-calculated Guidelines range is reasonable. *United States v. Allen*, 491 F.3d 178, 193 (4th Cir. 2007).

### B.    Discussion of the Issue

Mrs. Hosein argues that the district court acted unreasonably in denying her a four-level reduction based on her minimal role in the offense. Under § 3B1.2 of the Sentencing Guidelines, a district court must reduce the defendant's offense level if it finds that he or she played a minimal or minor

22

role in the offense. A defendant has the burden of showing by a preponderance of the evidence that he or she had a minimal or minor role in the offense. *United States v. Akinkoye*, 185 F.3d 192, 202 (4th Cir. 1999).

§ 3B1.2 provides for 2-, 3-, and 4-level decreases to the offense level depending on the defendant's mitigating role in the offense:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels. U.S.S.G. § 3B1.2.

In determining whether the reduction is appropriate, the "critical inquiry is . . . not just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." *United States v. Pratt*, 239 F.3d 640, 646 (4th Cir. 2001). A defendant seeking a downward adjustment for his or her minimal role in the offense must prove that he or she is entitled to it by a preponderance of the evidence. *See Akinkoye*, 185 F.3d at 202.

This court reviews the district court's determination on this issue for clear error. *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir. 1989).

Application of § 3B1.2 turns primarily on the defendant's particular role in the criminal activity, specifically whether he or she was a "minimal" or "minor" participant. *See id.* "The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the case." U.S.S.G. § 3B1.2, comment. (n.3(C)).

A defendant may receive a four-level reduction for being a minimal participant if she is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. (n.4). This level of culpability is shown by "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others . . . ." *Id.*

A two-level reduction may be made when a defendant is a minor participant, that is, one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5).

In deciding whether the defendant played a minor or minimal role, the "critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." *United States v. Pratt*, 239 F.3d 640,

24

646 (4th Cir. 2001) (internal quotations and citations omitted). Role

adjustments are determined on the basis of the defendant's relevant conduct.

*United States v. Fells*, 920 F.2d 1179, 1183-84 (4th Cir. 1990). The district

court in this case denied the minimal role reduction, as well as the minor role

reduction. The finding by the court was clearly erroneous.

A minimal role reduction is improper where the defendant's "conduct

is material or essential to committing the offense." *United States v. Palinkas*,

938 F.2d 456, 460 (4th Cir. 1991). *See also*, *Pratt*, 239 F.3d 640.

Mrs. Hosein was entitled to a minimal role reduction because her

conduct was neither material nor essential to committing the offense. Both

the district court and the government recognized this fact.

The recorded phone calls were between Mr. Hosein and the agent

regarding the history of the case.  (JA 955-978.)  Moreover, Mr. Hosein

answered the phone number and identified himself as Mrs. Hosein's spouse;

when the agent asked Mr. Hosein for an email address, he provided

Sherinahosein@gmail.com  (probably an email he had set up in his wife's

name) (JA 673); when the agent called the phone number provided on the

loan application, Mr. Hosein answered the phone (JA 674); Mr. Hosein

personally received the documents law enforcement emailed to

Sherinahosein@gmail.com (JA 675-76); Mr. Hosein called the agent (JA

677); the agent had another conversation with Mr. Hosein (JA 678); there is a recorded transcript between the agent and Mr. Hosein regarding the circumstances of the loans in question; (JA 578-680); the phone number on the loan application filled out by Mrs. Hosein was Mr. Hosein's phone number.  (JA 691.)

Other example were discussed at sentencing (JA 836-841) and the court agreed that there was dominance and control by Mr. Hosein over Mrs. Hosein.  (JA 842-843.)  The government concluded that there appeared to be duress by Mr. Hosein over Mrs. Hosein although Mrs. Hosein did not raise the issue as a defense at trial.  (JA 846.)

In imposing the 24 month sentence, the court noted that "…although Ms. Hosein's conduct was critical to the success of the criminal enterprise, **some of her conduct does appear to be directed by her husband**…."  (JA 848.) (Emphasis added.)

During Mr. Hosein's sentencing, counsel for the government summarized the evidence presented at trial — evidence showing that Mr. Hosein was the leader of Mrs. Hosein in this conspiracy, of which both had been convicted.  Mr. Hosein called the investigating case agent and presented himself to be a victim of the fraud.  (JA 955-978.)

Mr. Hosein made misrepresentations to the case agent about why Mr. Hosein and Mrs. Hosein had not made payments on the vehicles obtained by the fraudulent loans. (JA 955-978.) Mrs. Hosein was not a leader or organizer or a critical component of the conspiracy and the dominance and control of her husband and co-defendant appear to have affected her judgment.

On cross-examination Mrs. Hosein's trial counsel attempted to elicit information that while the email address appeared to belong to Mrs. Hosein, The person controlling to email account, and using the email was Nazim. (JA 708-710.) Mrs. Hosein's counsel argued that Nazim was responsible for all the conduct and just used Mrs. Hosein's name to perpetuate the fraud (Jan 716). Nazim met with Sean Young and authorized and gave the vehicle loans. (JA 717.)

The conspiracy involved financial transactions to obtain a number of expensive automobiles, during which Mr. Hosein played a more dominant role over his wife during the loan process. The Court found Mr. Hosein to be the "mastermind" of the crimes. (JA 910.) It also found that, while Mr. Hosein's statements did not "significantly impede the investigation," they were lies intended to advance the purposes of the fraud. (JA 910-911.)

Other factors that establish that Mrs. Hosein was entitled to a minimal role adjustment were noted by the government. Prior to trial, the Government filed a Motion *In Limine* regarding Co-Conspirator's Statements During and In Furtherance of  the Conspiracy detailing Mr. Hosein's conduct while arguing that Mrs. Hosein was involved in the crime. (JA 947-953.)

Even the government's own recitation of the facts indicate that Mrs. Hosein was entitled to a minor role adjustment. Specifically, the government averred:

> During the course of this investigation, Officer Curlee provided Piedmont Advantage Credit Union's ("PACU") loan application file to Special Agent Matt Hayes ("SA Hayes") of the United States Secret Service. Seeing that Sherina Hosein lived in Baldwin, New York, SA  Hayes attempted to reach Sherina Hosein by calling the number provided on the application. Nazim Hosein answered the phone, stated that his wife could not come to the phone, and provided an email address of "sherinahosein@gmail.com" to SA Hayes so that SA Hayes could send some of the loan documents to the Hoseins for their review. SA Hayes told Nazim Hosein in the email to contact him on Monday, February 7th to discuss whether the Hoseins had provided those loan documents to PACU. Neither Nazim nor Sherina Hosein contacted SA Hayes.
>
> On or about February 9, 2011, Special Agent Hayes had two conversations with defendant Nazim Hosein about the criminal conspiracy to obtain funds and property from a financial institution, as charged in Count One of the Superseding Bill of Indictment. In the first conversation, which was not recorded by the agent, Nazim Hosein answered the phone and told Special Hayes that his wife Sherina was not available to talk on the

phone. SA Hayes then asked Nazim Hosein whether his wife lived at 2806 Allegheny St., Charlotte, NC. Nazim Hosein replied that she did not. SA Hayes then asked Nazim Hosein if his wife worked at Orchid USA, Inc. Nazim Hosein replied that she did not. SA Hayes then asked Nazim Hosein if his wife made $75,000 a year. Nazim Hosein laughed. He then said, "No." Mr. Hosein then stated that he could no longer speak to SA Hayes on the phone, but that he would call him back later.

Later that afternoon, Nazim Hosein called Special Agent Hayes, who recorded the conversation and subsequently prepared a transcript of the same. See Exhibit 1 (Transcript of February 9, 2012 telephone conversation between Special Agent Hayes and Nazim Hosein)
(JA 947-948.)

The transcripts of these detailed conversations appear in JA 955-978.

In her sentencing memorandum, Mrs. Hosein provided the court with credible evidence that Mr. Hosein was the mastermind of this conspiracy. (JA 1076-1098.)

Under these circumstances, the district court clearly erred by refusing to award a greater mitigating role adjustment to Mrs. Hosein. As the district court did not correctly calculate Mrs. Hosein's Guidelines range, there are procedural defects in her sentence. Mrs. Hosein challenges, on appeal, the substantive reasonableness of her sentence as well.

## CONCLUSION

For the foregoing reasons, the court also erred in imposing a term of supervised release on Mr. Hosein in that it constituted a variant sentence, not procedurally supported, outside the guideline range of Mr. Hosein.

Moreover, the district court clearly erred in failing to grant Mrs. Hosein a minimal participant role adjustment.

## REQUEST FOR ORAL ARGUMENT

Furthermore, because of the unsettled law on the issues presented in this case, Mr. and Mrs. Hosein request oral argument pursuant to Local Rule 34(a).

Respectfully submitted, this the 21st day of March, 2014.

/s/ Chiege O. Kalu Okwara
CHIEGE O. KALU OKWARA**,** ESQ.
Ballantyne One
15720 John J. Delaney Drive
Suite #300
Charlotte, North Carolina 28277
(704) 944-3221 (Direct Line)
(704) 846-7952 (fax)
Email: chiege@aol.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,240*] words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the
number of*] lines of text, excluding the parts of the brief exempted by
Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

[ X ] this brief has been prepared in a proportionally spaced typeface
using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using
[*state name and version of word processing program*] with [*state
number of characters per inch and name of type style*].

Dated: <u>March 21, 2014</u>              <u>/s/ Chiege O. Kalu Okwara</u>
                                              *Lead Counsel for Appellants*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 21st day of March, 2014, I caused this

Brief of Appellants and Joint Appendix to be filed electronically with the

Clerk of the Court using the CM/ECF System, which will send notice of

such filing to the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE U.S. ATTORNEY
> 100 Otis Street, Room 233
> Asheville, North Carolina  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 21st day of March, 2014, I caused the

required copies of the Brief of Appellants and Joint Appendix to be hand

filed with the Clerk of the Court and the Sealed Volumes of the Joint

Appendix to be served, via UPS Ground Transportation, upon counsel for

the Appellee, at the above address.

/s/ Chiege O. Kalu Okwara
*Lead Counsel for Appellants*